Whaley, Chief Justice,
dissenting:
I cannot agree with the majority in the maimer in which the findings have been made or in the result arrived at in the opinion.
The incorporation of six pages of evidence in Finding No. 5 is contrary to Rule 75 (b) of this Court. This rule requires the Court to make ultimate findings of fact from the evidence and incorporate them in the special findings and not incorporate the evidence.
In my opinion the Court has sufficient time and it is the duty of the Court to separate the ultimate facts from the *143 irrelevant testimony and incorporate them in special findings and thereby remove any semblance of prejudice, and in doing so comply with the rules of the Court.
I cannot agree with the decision arrived at by the Court in which it finds plaintiff guilty of fraud. This finding is substantially based on the evidence which is incorporated in Finding No. 5. This is a statement taken down steno-graphically at a meeting between Mr. Thomas Hayes and Commander Rawlings on September 9, 1941, and introduced in evidence at the trial of the case.
The statements made by Mr. Hayes as to the condition of the S. S. Medric were based on the inspections made in June 1941 of the hull, boilers, engine, and equipment of the Medric by government inspectors of the Department of Commerce, Bureau of Marine Inspection and Navigation. At that time the Medric was also placed in drydock for the purpose of having its underwater body and outboard fittings examined. An annual license was issued based on these inspections which showed that the hull, equipment, boilers, and engines were good and the vessel was seaworthy. The inspections made by these officers were under the rules of the Government Bureau and are in minute detail. All water-front men know how strict these inspections are.
• Mr. Hayes, when discussing the vessel with Commander Rawlings, was fully justified in making a statement of seaworthiness and soundness, relying on the license issued to him by the Department of Commerce, and the inspections made by these officials of the Government.
However, previous to these inspections in June made by the Department of Commerce, Bureau of Marine Inspection and Navigation, the Navy Department had three inspections made; one on May 2, 1941, by Lt. Commander Direlan; another on May 8, 1941, by Commander Sullivan; and a third inspection on June 19, 1941, by Lieutenant Vick, who was accompanied by Mr. C. I. Olsen, Naval Architect. The first two inspections were when the vessel was afloat and the third was when the vessel was hauled out of the water for a complete examination of the underbody. Even borings were made in certain portions of the hull.
*144 Therefore, when Mr. Hayes made the statements to Commander Rawlings, he was stating the true condition of the vessel as disclosed by the examinations of the Government. After five examinations by the Government, through the Department of Commerce and the Navy Department by its own inspectors, had been made, Mr. Hayes had every reason and right to rely on their examinations. The Government did not rely on Mr. Hayes’ statement of the condition of the vessel because it had made its own inspections.
The Navy Department made another inspection in October after the meeting in September, and Commander Payne and Mr. Chadwick, U. S. Naval Architect, who made the inspection, urged the prompt delivery of the vessel. This inspection is not set out in the findings but is disclosed by the evidence.
Commander Rawlings stated at the meeting when nego-tions were on for the purchase price: “According to our information, the boats are in better than average condition.” Further on he said: “According to our information, we believe $75,000 would be a fair price.” Then again: “There are many ways of keeping them running. I recognize that this boat is above average. There is no doubt about that.” Reliance was placed by Commander Rawlings on the information the Navy had received and not the statement of Mr. Hayes. The meeting was plainly for the purpose of arriving at a price and not on the condition of the vessels.
At the request of the Navy Department a bill of sale was executed by plaintiff conveying the vessel to the defendant, and this conveyance was duly registered in the office of the Collector of Customs for New York.
A great deal is made of the fact that Mr. Hayes exaggerated and overestimated the costs of repairs and maintenance during the years of ownership. However, he was talking from recollection at the time and did not have the books of the company before him and he was covering a period of seventeen years.
The defendant did not turn down the vessel on account of the alleged misstatements of the cost of maintenance, repairs, and improvements, because, when the vessel was *145 rejected by the Navy Department in November 1941, no examination of the books of the plaintiff had been made. The examination of the books was made starting in November 1942 and completed in January 1943, more than a year after rejection.
I can find no semblance to fraud in this case.
I am satisfied that the inspections made by the officers of the Bureau of Marine Inspection and Navigation of the Department of Commerce and the three officers of the Navy Department were not careless and negligent. From the evidence the inspections were carefully and painstakingly made.
The final and last examination of the vessel I do not believe disclosed the real condition. It was made by a Board of Officers of the Navy, who examined it for. only three hours in a cursory manner and the vessel was not. hauled out on the ways.
It was not until after it had been delivered to the Government at the Navy Yard and in the possession of the defendant for several days that it was discovered that another inspection was necessary and the vessel did not pass that inspection. However, the defects discovered were so insignificant that it is impossible to reconcile this examination with the others, which had been made by the Government officials, on any other ground than the desire of the Government to be relieved of its contract. The conclusion is irresistible that the Government had changed its mind and did not want this class of ship, although it had agreed to-accept it and the vessel had been delivered at Philadelphia,, and the bill of sale therefor recorded on October 29, 1941,. in the Custom House at the Port of New York.
After a careful reading of the evidence and exhibits I am convinced that the plaintiff should recover.
JoNes, Judc/e, took no nart in the decision of this case.